**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1. JOSHUA D. LAMB;<br>2. MATTHEW C. LAY;<br>3. ERIC D. ACOSTA<br>4. JEFFERY A. HARPER;<br>5. DARREN L. THAMES;<br>6. CRAIG C. DEERINWATER;<br>7. COLBY J. WRIGHT<br>8. JAYME D. GOOD<br>9. KENDALL J. TAYLOR; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>1. CITY OF TULSA, OKLAHOMA, a municipal corporation;<br>2. MONROE NICHOLS, sued in his official capacity as Mayor of the City of Tulsa, Oklahoma;<br>3. MIKE MILLER, sued in his official capacity as City Administrator of the City of Tulsa, Oklahoma; and<br>4. LAUREL ROBERTS, sued in her official capacity as Commissioner of Public Safety of the City of Tulsa, Oklahoma<br><br>Defendants. | Civil Action No. ____________<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

**INTRODUCTION**

Plaintiffs, by and through their counsel, respectfully submit their Complaint against the City of Tulsa, Oklahoma, and state as follows:

## PARTIES

1. Plaintiffs Joshua D. Lamb (who is the Secretary Treasurer of the labor organization representing the firefighters of the City of Tulsa, International Association of Fire Fighters, AFL-CIO, Local 176 ("IAFF Local 176")), Matthew C. Lay (President of the IAFF Local 176), Eric D. Acosta, Jeffery A. Harper, Darren L. Thames, Craig C. Deerinwater, Colby J. Wright, Jayme D. Goad, and Kendall J. Taylor are current, or recently retired, employees of the City of Tulsa, Oklahoma, ("Defendant" or "City"), who bring this action under the Fair Labor Standards Act ("FLSA") against Defendants, on behalf of themselves and all other similarly situated employees, because the Defendants' unlawful and willful deprivation of Plaintiffs' right to overtime compensation. Plaintiffs are similarly situated because they have been subject to the same policies and/or practices, laid out below, whereby the City willfully failed to fully and timely compensate Plaintiffs at the lawful overtime rate for all overtime work, as required by the FLSA.

2. Defendant City of Tulsa, Oklahoma, operates the Tulsa Fire Department, which is the department responsible for fire and emergency response for the City of Tulsa and its residents.

3. Defendant Monroe Nichols, sued in his official capacity as Mayor of the City of Tulsa, Oklahoma, is the chief executive officer of the City and is responsible for the lawful exercise of executive authority over City operations, including ensuring that the City meets its obligations to compensate its employees in full and in a timely manner consistent with federal and state law. In his official capacity, Mayor Nichols has authority over the City's administrative and operational departments, including the departments responsible for payroll and human resources functions.

4. Defendant Mike Miller, sued in his official capacity as City Administrator of the City of Tulsa, Oklahoma, is the senior administrative official responsible for the day-to-day operations of the City government, including oversight of the City's human resources, payroll, and finance functions. In his official capacity, City Administrator Miller is responsible for ensuring that the City's payroll and human resources systems are capable of implementing legally mandated and contractually obligated compensation changes in a timely manner, and that employees are accurately paid in accordance with applicable law and contract.

5. Defendant Laurel Roberts, sued in her official capacity as Commissioner of Public Safety of the City of Tulsa, Oklahoma, is the City official with direct supervisory authority over the Tulsa Fire Department and all other public safety functions of the City. This explicitly includes ensuring that the City does not unlawfully take the benefits of its hardworking public safety employees' labor without providing compensation for that labor consistent with federal law.

6. At all times material herein, Defendants have employed the Plaintiffs in the positions of Firefighter, Lieutenant, Captain, and/or Chief in the Tulsa Fire Department. The exact dates of the Plaintiffs' employment are in the custody and control of the Defendants, and the Defendants know what dates each of the Plaintiffs have worked in each position.

7. Plaintiffs bring this FLSA action for backpay compensation, liquidated damages, attorneys' fees and costs, and other relief available under the FLSA, as amended, 29 U.S.C. §201, *et seq.*

8. Plaintiffs who are numbered within the caption of this Complaint have given their written consent to be party Plaintiffs in this action, pursuant to 29 U.S.C. §216(b). Such written consents are appended to this Complaint as Exhibit A.

9. At all times material herein, all Plaintiffs have been "employees" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

10. Defendant City of Tulsa is a municipal corporation under the laws of the State of Oklahoma, with the power to sue and be sued in its own name. Defendants Nichols, Miller, and Roberts are public officials of the City of Tulsa and sued in their official capacities as officials of the City of Tulsa. At all times material herein, Defendant City of Tulsa has been a "public agency" and "employer" within the meaning of the FLSA, 29 U.S.C. § 203(x), 203(d). Defendant has a principal office and place of business located within the United States District Court for the Northern District of Oklahoma, at the Tulsa City Hall, located at 175 E. 2nd Street, in Tulsa, Oklahoma 74103.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over Plaintiff's FLSA action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

12. This Court has supplemental jurisdiction over Plaintiffs' state law claim's (Count III — breach of the Collective Bargaining Agreement and Count IV – violation of Oklahoma Protection of Labor Act Failure to Timely Pay Earned Wages) pursuant to 28 U.S.C. § 1367(a). Count III and IV forms part of the same case or controversy as Count I and II under Article III of the United States Constitution. All four counts arise from a single, common nucleus of operative fact: the City's failure to implement the CBA-mandated wage rates effective April 30, 2026, resulting in the systematic underpayment of Plaintiffs across

the pay periods ending May 8, 2026, May 22, 2026, June 5, 202, and beyond. The same payroll records, the same CBA wage schedules, the same employees, and the same pay periods are at issue in every count. Judicial economy, convenience, and fairness to the parties require that all three counts be resolved in a single proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The state law claims neither substantially predominate over the FLSA claim nor raise novel or complex issues of state law that would warrant declining supplemental jurisdiction under 28 U.S.C. § 1367(c).

13. Venue is proper under 28 U.S.C. § 1391(b). The City is located in this District, Plaintiffs performed their work in this District, and the events giving rise to the claim occurred all within this District.

## FACTS

### A. Plaintiffs' work schedule and overtime threshold

14. Plaintiffs regularly work a repeating schedule of 24-hour shifts – spanning from 8 a.m. to 8 a.m. the following day, which is then followed by 48 hours off duty. This then creates the "24/48" shift schedule.

15. Accordingly, the City has adopted a 27-day work period for fire protection employees under 29 U.S.C. § 207(k). For a 27-day work period, the FLSA requires overtime compensation at one and one-half times the regular rate for all hours worked over the 204-hour threshold. 29 C.F.R. § 553.230.

16. In the Tulsa Fire Department, each fire suppression employee, including the Plaintiffs, is given one shift off duty for every 14 regularly scheduled shifts. The off-duty shift is referred to as an "Hours Reduction Shift" or "HRS."

17. As a result of their 24/48 shift schedule and recurring HRS days, Plaintiffs are regularly scheduled to work an alternating pattern of 216 hours in one 27-day work period followed by

192 hours in the next 27-day work period; this schedule repeats. As such, Plaintiffs are regularly scheduled to and do in fact work beyond the 204-hour overtime threshold pursuant to 29 U.S.C. 207(k).

18. While on shift, Plaintiffs perform their regular, primary job duty of performing emergency response work, including but not limited to responding to calls for emergency assistance, operating emergency apparatuses, advancing hose-line to burning buildings, extinguishing fires, and providing emergency medical assistance as needed.

19. Plaintiffs are paid a fixed salary every two weeks on their biweekly payday to compensate them for their regularly scheduled hours. Overtime compensation for hours worked over the 204-hour threshold is paid, when it is paid, through the same biweekly payroll as either "OT FLSA .5" or "OT FLSA 1.5".

20. The City records Plaintiffs scheduled and unscheduled hours in a Tulsa Fire Department timekeeping system it calls "Fire Time," and processes Plaintiffs' pay through the City's "Munis" payroll system. Overtime hours and rates are transmitted from Fire Time to Munis for payment. Both systems, and all time and payroll records for Plaintiffs, are in the City's exclusive possession, custody, and control.

## B. The 2025–2026 collective bargaining agreement

21. The City and IAFF Local 176 executed a collective bargaining agreement for fiscal year 2025–2026 (the "CBA") on April 8, 2026. At the City's request, to allow its payroll and human resources departments ample time to implement the new rates, the CBA's effect date was delayed by three weeks, resulting in April 30, 2026.

22. Article 9 (Wages) and Appendix A-1 (Firefighters Pay Schedule—Biweekly) of the CBA fix the biweekly wage rate for each rank and step in the bargaining unit. The CBA makes those rates effective retroactively to July 13, 2025, and obligates the City to pay the

difference between the new rates and the rates previously paid for all hours worked from that date forward.

23. Plaintiffs are members of the IAFF Local 176 bargaining unit the CBA covers. The CBA's wage provisions were negotiated for their direct benefit, and they are entitled to enforce those provisions.

24. Under 29 C.F.R. § 778.303, a retroactive pay increase awarded as a result of collective bargaining operates to increase Plaintiffs' regular rate of pay for the period of its retroactivity. The CBA's retroactive increase therefore raised Plaintiffs' regular rate of pay for every work period from July 13, 2025, forward. For each work period in which a Plaintiff worked more than 204 hours, the City owed – in addition to the increase itself for all hours worked – additional overtime compensation equal to one and one-half times the increase for every hour over 204.

25. When the CBA was executed on April 8, 2026, the City possessed every figure needed to compute each Plaintiff's retroactive wage differential and the overtime compensation that differential affected: the new rates in Appendix A-1, and each Plaintiff's hours for every work period since July 13, 2025, already recorded in Fire Time and paid through Munis. The City then had three additional weeks – the implementation period it requested – before the CBA took effect. The retroactive differential, the new fixed salaries, and the recalculated overtime were therefore due no later than the CBA's effective date of April 30, 2026, and in no event later than the first regular biweekly payday after that date, May 8, 2026.

### C. The City's failure to implement the CBA rates and pay the regular & FLSA retroactive wages

26. The City did not implement the CBA rates on April 30, 2026. It paid Plaintiffs at the superseded, lower rates for the pay periods ending May 8, May 22, June 5, and June 19, 2026; calculated overtime for those periods at the lower rates; and paid no retroactive differential and no recalculated overtime for any period in any of those paychecks.

27. On June 2, 2026 – thirty-three days after the CBA's effective date and fifty-five days after its execution – Douglas Carner, Chief of Staff of the Tulsa Fire Department, wrote to every member of the Department ("All FIRE Users") that "[o]ur goal was to complete the retro-pay by June 5th. However, we encountered challenges in applying the pay to this week's check." Chief Carner stated that the City "anticipate[d] that all members will be paid by June 19th." By this communication the City acknowledged that it had paid no retroactive wages to any member as of June 2, 2026, that it would not do so on the June 5, 2026 payday, and that it had unilaterally set itself a new deadline of June 19, 2026.

28. On June 18, 2026, the City issued a "retro check" to some, but not all, bargaining unit members. Chief Carner wrote to All FIRE Users that morning, under the subject line "6/18/26 retro-pay explanation," that the City was "continuing to work toward finalizing FY26 retro-pay," and described "what should have been included on today's retro check".

29. Chief Carner's June 18, 2026, email stated expressly that "PAT, FLSA, stipends, overtime, and comp-time sellback are not included in today's retro-pay, they will be included on the next check,". Thus, by the City's own account, the June 18, 2026, payment excluded every FLSA overtime component of the retroactive increase – both the recalculated overtime for the retroactive period and the overtime differential that 29 C.F.R. § 778.303 requires. The City knew on June 18, 2026, that this overtime compensation was owed, knew it had not been paid, and continued to defer it.

30. The City did not pay the deferred FLSA and overtime compensation, correctly computed, on "the next check" or on any check since. On July 17, 2026, a regular payday, Chief Carner wrote to All FIRE Users under the subject line "Retro-Pay issue" that "Payroll has identified an issue that affected this paycheck. As a result, some members may have received pay they were not entitled.

31. As of July 17, 2026 – eleven weeks after the CBA's effective date and more than a year into the retroactive period – the City could not identify which bargaining unit members had been paid, which had been overpaid, and which remained unpaid, and it was asking firefighters to hold City funds pending further instruction.

32. Of note, this was dealing with the entire payroll system and its attempt at calculating and disbursing any raise and attached FLSA payment in relation to the "STEP" increase for each member, and not the other remaining raises that were agreed upon that would also alter FLSA payments.

33. On August 5 and 6, 2026, a bargaining unit member, Rodney Gray, asked the Tulsa Fire Department's Payroll Supervisor, Marlowe Dean, to review his pay, reporting that "[o]vertime rates haven't changed with new pay scale" and that he had not "received all of retro from overtime and anything that would apply." led to, while others may not have received pay they were due."

34. Later on, August 6, 2026, Ms. Dean, the City's Payroll Supervisor for the Fire Department, responded: "All the overtime rates are wrong for everyone. They are actually correct in Munis, but they aren't coming in correctly from Fire Time. IT has at least identified the issue so hopefully they will get it corrected so we don't have to do so much manually with the OT reports. We are working on all the corrections."

35. By this August 6, 2026 statement – ninety-eight days after the CBA's effective date, one hundred twenty days after its execution, and nearly thirteen months into the retroactive period – the City's Payroll Supervisor admitted that: (a) the overtime rate being paid to every member of the bargaining unit was wrong; (b) the cause was the City's own systems, specifically the transfer of overtime data from the Fire Department's Fire Time timekeeping system into the City's Munis payroll system; (c) the City had been relying on manual corrections to overtime reports rather than fixing the system; (d) the City's information technology staff had only recently "identified the issue" and had not yet corrected it; and (e) the City had not informed bargaining unit members that their overtime was being paid at incorrect rates. The City's own payroll personnel gave inconsistent explanations of where the error lay – one stating the rates were "not correct in munis," the other that they were "correct in Munis" but were not "coming in correctly from Fire Time."

36. As a result, Plaintiffs have not been paid the wages the CBA requires: the difference between the CBA rates and the rates actually paid for hours worked from July 13, 2025, through the date the City fully implements the CBA rates, together with the overtime compensation that difference affects.

37. As of September 2, 2026, in an official "TFD Payroll Working Group" meeting with both payroll employees and bargaining representatives present, it was made clear that ALL FLSA retro-pay has not been paid correctly to its members at that time.

38. Notably, retired members of the Tulsa Fire Department of which retired after the retroactive back date (July 13, 2025) to the current date have not received any sort of payment to cover their eared base pay OR attached overtime FLSA compensation. Nor has

there been any sort of communication to that effect. At filing, no attempts by the City have been made to correct this or even address it for its retired members.

**D. Willfulness**

39. The City ***clearly knew*** its FLSA obligations to Tulsa firefighters. In *Lamb v. City of Tulsa*, No. 4:22-cv-00055-TCK-SH (N.D. Okla.), 526 Tulsa firefighters sued the City for failing to pay overtime required by 29 U.S.C. § 207(k) and for paying overtime weeks or months after the regular payday in violation of 29 C.F.R. § 778.106. On June 28, 2023, the Court entered a stipulated judgment under which the City paid $1,060,000 to resolve those claims. Individual firefighters have also filed wage claims against the City with the Oklahoma Department of Labor in 2023.

40. The City therefore knew, before it negotiated the CBA, that the FLSA requires overtime to be paid at the correct regular rate on the regular payday, that a retroactive wage increase requires recalculation of overtime for the retroactive period, and that its payroll processes had previously failed to meet those requirements.

41. With that knowledge, the City negotiated a wage increase retroactive to July 13, 2025, requested and received a three-week implementation period, and then failed to implement the new rates on the effective date, failed to pay the retroactive differential on the first payday thereafter, and failed to recalculate the overtime the increase affected.

42. The City's own communications establish that it knew FLSA overtime was owed and chose to defer it. On June 18, 2026, the City identified "FLSA" and "overtime" as components of the retroactive pay it was not paying. On July 17, 2026, it acknowledged that its payroll had instead produced overpayments and underpayments it could not yet identify—tied to payments not yet including FLSA overtime. On August 6, 2026, its Payroll Supervisor acknowledged that "[a]ll the overtime rates are wrong for everyone" because of the City's

own systems, that the City had been correcting overtime reports manually, and that the defect had not been fixed. The City nonetheless continued to issue paychecks it knew computed wages at incorrect rates and continued to delay the required overtime payments.

43. Despite the *Lamb* litigation and settlement, the City has thus adopted, as a matter of policy, the practice of paying negotiated wages and the overtime they affect whenever its payroll systems permit, *if ever*, rather than when the FLSA and the CBA require.

44. The City either knew that its conduct violated the FLSA or showed reckless disregard for whether it did. 29 U.S.C. § 255(a). For the same reasons, the City did not act in good faith and had no reasonable grounds for believing that its conduct complied with the FLSA. 29 U.S.C. § 260.

**COUNT I**

**Violation of Sections 7(a), (k) of the Fair Labor Standards Act, 29 U.S.C. §§ 207(a),(k)**

45. Plaintiffs re-allege, and incorporate by reference herein, Paragraphs 1 through 40 of this Complaint.

46. Defendants have suffered or permitted Plaintiffs and other similarly situated employees to work in excess of the hourly standards set forth under 29 U.S.C. § 207(k). During the times that Plaintiffs have worked in excess of 204 hours in a 27-day work period, Defendants have failed to provide Plaintiffs with overtime pay at the rate of one and one-half times their regular rates of pay for all overtime hours.

47. By failing to pay the Plaintiffs and other employees similarly situated the overtime pay required under the law, the Defendants have violated and are continuing to violate the provisions of the FLSA in a manner that is unreasonable, willful, and in bad faith. As a result, at all times material herein, the Plaintiffs have been unlawfully deprived of overtime compensation and other relief for the maximum period allowed under the law.

48. As a result of the Defendants' willful and bad faith violations of the FLSA, there have become due and owing to the Plaintiffs an amount that has not yet been precisely determined. The employment and work records for the Plaintiffs (including time and attendance records) are in the exclusive possession, custody, and control of the Defendants, and the Plaintiffs are unable to state at this time the exact amount owing to them. Defendants are under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to the Plaintiffs and other employees similarly situated from which the amount of Defendants' liability can be ascertained.

**COUNT II**

**Failure to Pay FLSA Overtime in a Timely Manner by Paying Weeks or Months After the Overtime was Worked**

49. Plaintiffs re-allege, and incorporate by reference herein, Paragraphs 1 through 44 of this Complaint.

50. The FLSA mandates that overtime compensation be paid on the regular payday for the period in which such workweek ends. Overtime payments under the FLSA may not be delayed except as reasonably necessary to compute the amount owned, and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106.

51. Defendants have violated these basic principles by delaying Plaintiffs' overtime payments for working in excess of 204 hours a work period by weeks and in some cases months, with such delay not being reasonably necessary to compute Plaintiffs' overtime pay, but rather because of a failure by management personnel to approve overtime payments or otherwise unreasonably fail to effectuate timely payment. To date of filing, **<u>five months</u>** after the

retro-pay was agreed-upon to be paid out, Defendants have **not** received **any** of their retro-active FLSA overtime pay going back to July 13, 2025.

52. Defendants' failure to pay Plaintiffs FLSA overtime pay in a timely manner, and their withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. §§ 207(a), (k); 29 C.F.R. § 778.106; see also *Seneca Coal & Coke Co. v. Lofton*, 136 F.2d 359, 363 (10th Cir. 1943), cert. denied, 320 U.S. 772 (1943) (affirming award of liquidated damages for late payment of overtime because it was "not paid when due in the regular course of employment," in violation of the FLSA).

53. As a result of the Defendants' willful and bad faith violations of the FLSA, there have become due and owing to the Plaintiffs an amount that has not yet been precisely determined. The employment and work records for the Plaintiffs (including time and attendance records) are in the exclusive possession, custody, and control of the Defendants, and the Plaintiffs are unable to state at this time the exact amount owing to them. Defendants are under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to the Plaintiffs and other employees similarly situated from which the amount of Defendants' liability can be ascertained.

54. Pursuant to 29 U.S.C. § 216(b), Plaintiffs are entitled to recover liquidated damages in an amount equal to their backpay for Defendants' failure to pay overtime compensation.

55. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

**COUNT III**

**Breach of the Collective Bargaining Agreement**

56. Plaintiffs incorporate paragraphs 1 through 51.

57. The CBA is a valid and enforceable contract between the City and IAFF Local 176. Plaintiffs, as members of the bargaining unit for whose benefit the CBA's wage provisions were negotiated, may enforce those provisions.

58. The CBA required the City to pay Plaintiffs the wage rates in Article 9 and Appendix A-1 for all hours worked on and after July 13, 2025, beginning with the first pay period after April 30, 2026, and to pay the retroactive difference for the period from July 13, 2025 through April 30, 2026.

59. Plaintiffs performed the work for which the CBA rates were promised.

60. The City breached the CBA by paying Plaintiffs less than the CBA rates for the pay periods ending May 8, May 22, June 5, and June 19, 2026 and subsequent pay periods, and by failing to pay, or paying incorrectly, the retroactive wage difference owed for July 13, 2025 through April 30, 2026.

61. Plaintiffs have been damaged in the amount of the difference between the wages the CBA required and the wages the City actually paid for all hours worked from July 13, 2025, forward, together with the overtime compensation that difference affects. That amount is fixed by the rate schedule in Appendix A-1 of the CBA and by the City's own Fire Time and Munis records; it is certain, or capable of being made certain by calculation; and each installment of it became due on a date certain, no later than the regular payday for the period in which the wages were earned. Plaintiffs are therefore entitled to recover prejudgment interest on each unpaid amount from the date it was due. 23 O.S. § 6.

62. Plaintiffs have been further damaged by the City's retention of their wages for months after those wages were earned and due. Throughout that period Plaintiffs were deprived of the use of money that belonged to them and that they needed to meet their own obligations,

while the City held that money in its own accounts and had the full use and benefit of it, including any return it generated.

63. The City has thus profited from its own breach at Plaintiffs' expense. Payment of the principal amount alone, months or years late, will not make Plaintiffs whole. The City has even ***celebrated*** the recent consistent and above-average returns on money within their operating accounts in later negotiation meetings, leaving plaintiffs to have no option but to feel the obvious loss of use from **their** earned income.

64. Additionally, the City has had ample amount of time—stemming from the prior FLSA lawsuit, in which they were charged with the task of creating an adequate payroll management system and/or staff this management area appropriately—and still have failed to do so ***years*** later.

**COUNT IV**

**Violation of Oklahoma Protection of Labor Act Failure to Timely Pay Earned Wages – Okla. Stat tit. 40 §§ 165.1 *et. seq.***

65. Oklahoma's Protection of Labor Act ("OPLA"), Okla. Stat. tit. 40, §§ 165.1 *et seq*., establishes mandatory wage payment obligations for employers and provides employees with both administrative and judicial remedies for non-payment. The OPLA defines "wages" broadly to include not only regular pay but also "overtime pay" and "other similar advantages agreed upon between the employer and employee or provided by an established policy." Okla. Stat. tit. 40, § 165.1(4). This definition expressly encompasses the CBA-established wage rates at issue.

66. The City is an "employer" within the meaning of Okla. Stat. tit. 40, § 165.1(b). Plaintiffs are "employees" within the meaning of § 165.1(a). The increased wages owed under the CBA — the differential between the rates paid and the rates required — constitute "wages"

within the meaning of § 165.1(4), as they represent compensation agreed upon between the employer and employees through their collective bargaining representative.

67. Oklahoma law requires employers to pay earned wages on established paydays. Okla. Stat. tit. 40, § 165.2. The City failed to pay Plaintiffs their earned wages at the CBA rates on the established paydays of May 8, 2026, May 22, 2026, June 5, 2026, and beyond. For each pay period, the wage differential became due and owing on the payday for that period.

68. Under Okla. Stat. tit. 40, § 165.3, liquidated damages for wage non-payment are calculated as either 2% of the unpaid wages for each day the wages remain unpaid, or an amount equal to the unpaid wages, whichever is smaller. However, liquidated damages are not assessed if there is a bona fide disagreement over wages owed. Here, there is no bona fide disagreement: the CBA unambiguously establishes the applicable rates, and the City's own enacted contract fixes the amounts owed. The failure to pay is a purely administrative/systems failure, not a legal dispute over whether wages are owed.

69. Unlike the FLSA's liquidated damages scheme, Oklahoma's liquidated damages provision operates independently. Courts have held that an employer asserting a bona fide dispute bears the burden of demonstrating that dispute is genuine. No genuine dispute over the wage rates exists here. *See Feightner v. Bank of Okla., N.A.,* 2003 OK 20 (2003).

70. Employees are not required to exhaust administrative remedies before filing suit under the OPLA. *Id.* The administrative remedy (filing a claim with the Oklahoma Commissioner of Labor under Okla. Stat. tit. 40, § 165.7) and the judicial remedy (filing suit under § 165.9) are alternative remedies. Plaintiffs may pursue judicial relief directly without first filing with the ODOL.

71. Under Okla. Stat. tit. 40, § 165.9, Plaintiffs are entitled to recover unpaid wages, liquidated damages as calculated under § 165.3, pre- and post-judgment interest, attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

a. **Findings of Willfulness:** Enter judgment finding that Defendants willfully, in bad faith, and wrongfully violated their statutory obligations under the Fair Labor Standards Act (FLSA) and the Oklahoma Protection of Labor Act (OPLA), depriving Plaintiffs of their statutory rights;

b. **Finding of Breach:** Enter judgment finding that Defendants breached their contractual obligations owed to Plaintiffs under the Collective Bargaining Agreement (CBA);

c. **Accounting:** Order a complete and accurate accounting of all unpaid compensation to which Plaintiffs are entitled, including but not limited to incorrect or missed pension contributions, unpaid regular wages, unpaid overtime wages, contractually agreed-upon retroactive pay, and all associated benefits;

d. **Compensatory and FLSA Liquidated Damages:** Award Plaintiffs compensatory damages for all unpaid regular and overtime compensation, alongside maximum mandatory liquidated damages equal to 100% of the unpaid FLSA-qualifying compensation due to Defendants' lack of good faith;

e. **CBA Differences and Prejudgment Interest:** Award Plaintiffs the unpaid wage differences owed under the CBA, together with prejudgment interest from the exact date each payment originally became due pursuant to 23 O.S. § 6;

f. **Prospective Injunctive / Declaratory Relief:** Order Defendants to immediately adjust and correctly implement Plaintiffs' future wage rates and pension contributions to align fully with the terms of the CBA;

g. **Fees and Costs:** Award Plaintiffs their reasonable attorneys' fees, expert witness fees, and all litigation costs associated with bringing this action, pursuant to the FLSA and 12 O.S. § 936;

h. **Post-Judgment Interest:** Award post-judgment interest at the legal rate from the date of judgment until fully satisfied; and

i. Grant such other and further relief as the Court deems just and equitable.

Respectfully submitted,

Chris Kannady

Chris L. Kannady, OBA #20513
Foshee & Yaffe Law Firm
12231 South May Avenue
Oklahoma City, Oklahoma 73170
Tel: (405) 378-3033
clk@fylaw.com

Attorney for Plaintiffs

**CONSENT TO SUE**
**REQUEST TO BECOME PARTY-PLAINTIFF**
*Tulsa Fire Fighters FLSA Overtime Pay*

**I hereby consent to become a party plaintiff in an action to recover overtime wages and other relief under the
Fair Labor Standards Act.**

NAME Lamb Joshua D.

Last Name First Middle

SIGNATURE JLamb September 11, 2026

Exhibit A

**CONSENT TO SUE**
**REQUEST TO BECOME PARTY-PLAINTIFF**
*Tulsa Fire Fighters FLSA Overtime Pay*

**I hereby consent to become a party plaintiff in an action to recover overtime wages and other relief under the Fair Labor Standards Act.**

| NAME | Lay | Matthew | C. |
|---|---|---|---|
| | Last Name | First | Middle |

SIGNATURE Matthew Lay September 11, 2026

Exhibit A

**CONSENT TO SUE**
**REQUEST TO BECOME PARTY-PLAINTIFF**
*Tulsa Fire Fighters FLSA Overtime Pay*

**I hereby consent to become a party plaintiff in an action to recover overtime wages and other relief under the**
**Fair Labor Standards Act.**

NAME Acosta Eric D.

Last Name First Middle

SIGNATURE Eric Acosta September 11, 2026

Exhibit A

**CONSENT TO SUE**
**REQUEST TO BECOME PARTY-PLAINTIFF**
*Tulsa Fire Fighters FLSA Overtime Pay*

**I hereby consent to become a party plaintiff in an action to recover overtime wages and other relief under the**
**Fair Labor Standards Act.**

NAME Harper Jeffery A.

Last Name First Middle

Exhibit A

SIGNATURE Jeff Harper September 11, 2026

**CONSENT TO SUE**
**REQUEST TO BECOME PARTY-PLAINTIFF**
*Tulsa Fire Fighters FLSA Overtime Pay*

**I hereby consent to become a party plaintiff in an action to recover overtime wages and other relief under the**
**Fair Labor Standards Act.**

| | | | |
|---|---|---|---|
| NAME | Thames | Darren | L. |
| | Last Name | First | Middle |

SIGNATURE Darren Thames September 11, 2026

Exhibit A

**CONSENT TO SUE**
**REQUEST TO BECOME PARTY-PLAINTIFF**
*Tulsa Fire Fighters FLSA Overtime Pay*

**I hereby consent to become a party plaintiff in an action to recover overtime wages and other relief under the**
**Fair Labor Standards Act.**

| | | | |
|---|---|---|---|
| NAME | Deerinwater | Craig | C. |
| | Last Name | First | Middle |

Exhibit A

SIGNATURE Craig Deerinwater September 11, 2026

**CONSENT TO SUE**
**REQUEST TO BECOME PARTY-PLAINTIFF**
*Tulsa Fire Fighters FLSA Overtime Pay*

**I hereby consent to become a party plaintiff in an action to recover overtime wages and other relief under the Fair Labor Standards Act.**

| | | | |
|---|---|---|---|
| NAME | Goad | Jayme | D. |
| | Last Name | First | Middle |

SIGNATURE Jayme Goad September 11, 2026 Exhibit A

**CONSENT TO SUE**
**REQUEST TO BECOME PARTY-PLAINTIFF**
*Tulsa Fire Fighters FLSA Overtime Pay*

**I hereby consent to become a party plaintiff in an action to recover overtime wages and other relief under the Fair Labor Standards Act.**

| NAME | Taylor | Kendall | J. |
|---|---|---|---|
| | Last Name | First | Middle |

SIGNATURE Kendall Taylor September 11, 2026

Exhibit A

**CONSENT TO SUE**
**REQUEST TO BECOME PARTY-PLAINTIFF**
*Tulsa Fire Fighters FLSA Overtime Pay*

**I hereby consent to become a party plaintiff in an action to recover overtime wages and other relief under the**
**Fair Labor Standards Act.**

| NAME | Wright | Colby | J. |
|---|---|---|---|
| | Last Name | First | Middle |

SIGNATURE Colby Wright September 11, 2026

Exhibit A